UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA ALTAGRACIA FIGUEROA TAVAREZ,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>    Defendant. | CIVIL ACTION NO. 3:20-CV-00321<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Plaintiff Maria Altagracia Figueroa Tavarez ("Tavarez") brings this action under section 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. For the following reasons, the undersigned shall order the Commissioner's decision be **REVERSED** and this matter **REMANDED.**

I. **BACKGROUND AND PROCEDURAL HISTORY**

In August 2017, Tavarez filed an application under Title XVI for supplemental security income benefits, claiming disability beginning April 8, 2008. (Doc. 17-2, at 23). The Social Security Administration initially denied the application in November 2017, prompting Tavarez's request for a hearing, which Administrative Law Judge (ALJ) Mike Oleyar held on May 9, 2019. (Doc. 17-2, at 23). In a September 2019 written decision, the ALJ determined that Tavarez is not disabled and therefore not entitled to benefits or income under Title XVI. (Doc. 17-2, at 23-36). The Appeals Council subsequently denied Bonilla's request for review.

(Doc. 17-2, at 2).

On February 21, 2020, Tavarez commenced the instant action. (Doc. 1). The Commissioner responded on August 31, 2020, providing the requisite transcripts from Tavarez's disability proceedings. (Doc. 16; Doc. 17). The parties then filed their respective briefs, with Tavarez raising one principal basis for reversal or remand. (Doc. 18; Doc. 23).

**II.   STANDARDS OF REVIEW**

To receive benefits under XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).[1]

   A.   ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 416.912(a)(1). Thus, if the claimant establishes an inability to do past

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 416.912(a)(1).

    B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for Title XVI benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, 798 F. App'x 734, 736 (3d Cir. 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Tavarez is disabled, but whether the Commissioner's determination that Tavarez is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11,

2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Tavarez "has not been under a disability, as defined in the Social Security Act, since August 17, 2017, the date the application was filed." (Doc. 17-2, at 35). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 416.920(a).

#### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974. Here, the ALJ determined that Tavarez "has not engaged in substantial gainful activity since August 17, 2017, the application date," and therefore proceeded to step two of

the analysis. (Doc. 17-2, at 25).

    B.    STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Tavarez has seven severe impairments: bipolar disorder, adjustment disorder, depressive disorder, intellectual disability, hypothyroidism, degenerative joint disease, and neuritis in the left foot. (Doc. 17-2, at 25).

    C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. I, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 416.920(a)(4)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 416.920(d). Here, the ALJ determined that none of Tavarez's impairments, considered individually or in combination, meets or equals the severity of a listed impairment. (Doc. 17-2, at 26-29).

D.    Residual Functional Capacity

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 416.929(b)–(c).

Here, the ALJ found that while Tavarez's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 17-2, at 30). The ALJ concluded that Tavarez had the RFC "to perform medium work as defined in 20 C.F.R. § 416.967(c) except [she] is limited to frequent use of foot controls with her left lower extremity." (Doc. 17-2, at 29). The ALJ also limited Tavarez to understanding, remembering, and applying simple instructions; performing simple routine tasks but not at a production rate pace such as assembly line work; simple work-related decisions with occasional changes in the work setting, and occasional interaction with supervisors and co-workers but never interaction with the public; and never performing tandem or group tasks with co-workers. (Doc. 17-2, at 29).

E.    Step Four

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, the ALJ determined that Tavarez is unable to perform any past relevant work, including working as a babysitter. (Doc. 17-2, at 34). Thus, the ALJ proceeded to step five of the sequential analysis. (Doc. 17-2, at 34).

F.  STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. § 416.920(a)(4)(v). Here, considering Tavarez's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Tavarez can perform. (Doc. 17-2, at 34-35). In making this determination, the ALJ relied on the vocational expert's testimony that Tavarez is able to perform the requirements of occupations such as Vehicle Cleaner, Janitor, and Laundry

Worker, all with open positions ranging from 209,000 to 2,100,000 nationally. (Doc. 17-2, at 35). Accordingly, the ALJ determined that Tavarez is not disabled and denied her application for benefits. (Doc. 17-2, at 35).

## IV. DISCUSSION

On appeal, Tavarez submits that the ALJ did not properly consider the opinion of the Commissioner's examining expert. (Doc. 18, at 4). The ALJ ordered that a psychological consultative examination be performed after the hearing. (Doc. 18, at 6-7). This examination was performed on July 3, 2019, by Dr. Jennifer Betts, Psy.D. (Dr. Betts), who "administered standardized psychological testing regarding [Tavarez's] intelligence related limitations, and offered an assessment of her work-related limitations." (Doc. 18, at 7). According to Tavarez, Dr. Betts determined that Tavarez is "disabled" as defined by the Commissioner, but the ALJ wrongly found her opinion to be "not persuasive." (Doc. 18, at 11-14). The ALJ erred in concluding that Dr. Betts's opinion was less supported and consistent with the record than a prior non-examining psychological consultant, according to Tavarez. (Doc. 18, at 14-15). Tavarez asserts that consistencies and support from the record which were not considered by the ALJ provide grounds for remand. (Doc. 18, at 15-22).

The Commissioner responds that substantial evidence supports the ALJ's decision. (Doc. 23, at 12). The Commissioner submits that the ALJ correctly found Dr. Betts's opinion to not be persuasive "because Dr. Betts failed to support and provide reasons for [her] assessed marked to extreme limitations. (Doc. 23, at 19). In support of her assessment of specific functional limitations, Dr. Betts only listed Tavarez's diagnoses, according to the Commissioner. (Doc. 23, at 19). Furthermore, the ALJ determined that Dr. Betts's opinion was inconsistent with the longitudinal treatment records for the period at issue. (Doc. 23, at

19). According to the Commissioner, "Plaintiff's mental health treatment records spanning an 11 year period revealed no evidence of the neurocognitive disorder or the level intellectual disability that form the basis of Dr. Betts' [sic] assessment." (Doc. 23, at 21).

New Social Security Administration regulations governing the evaluation of medical evidence were effectuated in March 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017). The new regulations state that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.920c(a). The weight given to a medical opinion now depends largely on that opinion's consistency and supportability, which are the same factors that formed the foundation of the rule which prioritized the opinion of a treating source. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) ("An ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion."). These factors must be addressed in the decision. 20 C.F.R. § 920c(b)(2). In addition to consistency and supportability, the ALJ must consider – but need not explain – the medical source's relationship with the claimant, specialization, and any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.920c(a). "[W]hen the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors…" *Densberger*, 2021 WL 1172982, at *8.

Tavarez submits that the ALJ, when considering the medical opinions of Dr. Betts and Dr. Murphy, erred in finding that Dr. Betts's medical opinion was not as well supported and

consistent with the record as Dr. Murphy's. (Doc. 18, at 6-23). As noted by the ALJ, Dr. Betts determined that Tavarez has poor relation, social skills, and overall presentation. (Doc. 17-2, at 32). These are associated with obvious cognitive and neurocognitive deficits. (Doc. 17-2, at 32). Dr. Betts opined that Tavarez's ability to understand, remember, and carry out instructions is markedly to extremely limited due to a severe intellectual disorder, and that Tavarez's attention, concentration, insight, and judgment are also limited. (Doc. 17-2, at 32). Dr. Betts also found that Tavarez's "ability to interact appropriately with the public was markedly limited, her ability to interact with supervisors and co-workers was extremely limited and her ability to respond appropriately to changes in a routine work setting was extremely limited as well." (Doc. 17-2, at 32). "Extremely limited" is defined as "unable to function in this area independently, appropriately, effectively, and on a sustained basis." (Doc. 17-13, at 12). "Markedly limited" is defined as "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." (Doc. 17-13, at 12).

The ALJ found this opinion not persuasive because Dr. Betts "fails to support and reason the marked to extreme limitations and it is not consistent with the mental status examination findings of record nor the DDE opinion, which show consistently that the claimant's memory is intact, her thought process is coherent and her intelligence appears within normal range." (Doc. 17-2, at 32). The ALJ also gave Dr. Betts's opinion less weight because "this opinion is based on a one-time examination, the limitations at best represent only a snapshot of the claimant's actual level of functioning on a longitudinal basis." (Doc. 17-2, at 32).

The ALJ's statement that Dr. Betts "fails to support and reason the marked to extreme limitations" is contrary to the record. (Doc. 17-2, at 32). Dr. Betts supports her conclusion

that Tavarez is marked to extremely limited in her ability to understand, remember, and carry out instructions by explaining that upon administration of a standardized nonverbal intelligence measure,

> [t]he claimant showed no ability to understand and recall instructions provided to her. The claimant was provided the six practice items and got only one of the six items correct. Even though the correct responses were provided to her as immediate feedback, when the practice items were administered to her a second time, as per TONI procedure, the claimant showed no significant memory of having been told the correct answers or further ability to understand the instructions, getting only two of the six practice items correct…. The claimant received an index score of less than 65 and a percentile rank of less than 1 with a descriptive term of very poor.

(Doc. 17-13, at 10).

This explanation constitutes "support and reason" for the opinion that Tavarez is marked to extremely limited in her ability to understand, remember, and carry out instructions. (Doc. 17-13, at 12).

As for the marked and extreme limitations in Tavarez's ability to interact with supervisors, co-workers, and the public, Dr. Betts provides support for this throughout her assessment. (Doc. 17-13). Dr. Betts notes that Tavarez's daughter describes Tavarez as "verbally aggressive and insulting to others. The claimant experiences worthlessness and diminished self-esteem." (Doc. 17-13, at 6). Dr. Betts goes on to state that Tavarez is "socially withdrawn." (Doc. 17-13, at 6). Though Tavarez reported to Dr. Betts that she sometimes thinks her name is being called when no one is there, Dr. Betts opined that she did not believe Tavarez experiences hallucinations but that "it is likely that [Tavarez's] thinking has to do with disordered perception associated with severe cognitive and neurocognitive deficits." (Doc. 17-13, at 7). Dr. Betts concluded that Tavarez's "[m]anner of relating, social skills, and overall presentation was poor associated with obvious cognitive and neurocognitive deficits."

11

(Doc. 17-13, at 8).

Tavarez's thought processes also showed "significant evidence of cognitive and neurocognitive deficits." (Doc. 17-13, at 8). This included significant limitation in attention and concentration, evidenced by the fact that Tavarez could not count by twos, and could count by single digits to only four. (Doc. 17-13, at 8). Tavarez "could not complete any digits backwards even after extensive instruction was provided. [She] could name 3 objects immediately, but after delay could recall only 1 independently and could not recall the other two, even with prompting." (Doc. 17-13, at 9). Dr. Betts opined that Tavarez "showed no ability to understand and recall instructions provided to her." (Doc. 17-13, at 9). This inability to understand instructions would undoubtedly limit her ability to interact with supervisors and co-workers. As a whole, Dr. Betts's descriptions and assessments constitute "support and reason" for Dr. Betts's opinion that Tavarez is markedly and extremely limited in her ability to interact with supervisors, co-workers, and the public. (Doc. 17-13, at 13). The ALJ's statement that Dr. Betts "fails to support and reason the marked to extreme limitations" is not reflected by the record. (Doc. 17-2, at 32).

A review of Dr. Betts's opinion shows that the ALJ's conclusion as to its supportability was unreasonable. (Doc. 17-2; Doc. 17-13). Dr. Betts clearly provided "support and reason" for her opinion as to Tavarez's marked and extreme limitations. (Doc. 17-13, at 6-9, 10-13). The ALJ did not address the supportability of Dr. Betts's opinion, but rather determined that it did not exist. (Doc. 17-2, at 32) ("This opinion is not persuasive as the doctor fails to support and reason the marked to extreme limitations…"). "[T]he ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Mason*, 994 F.2d at 1066). The ALJ rejected evidence for no reason

12

in this case, failing to satisfy the requirement that he explain the supportability factor for Dr. Betts's medical opinion. (Doc. 17-2, at 32); *see* 20 C.F.R. § 416.920c(b)(2). Remand is necessary to resolve this issue.

Because the Court recommends vacatur of the ALJ's decision based on the failure to consider Dr. Betts's supporting evidence, it declines to address Tavarez's remaining allegations of error, as "[a] remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016).

V.   **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Commissioner's decision to deny Plaintiff's application for benefits be **VACATED** and the case be **REMANDED** for further proceedings consistent with this order. Final judgment be issued in favor of Plaintiff, and the Clerk of Court close this case.

An appropriate Order follows.

Dated: July 21, 2021

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**